## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 09-87 (DWF/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Daniel Ernest Petersen, | |
| Defendant. | |

Jeffrey S. Paulsen, Assistant United States Attorney, United States Attorney's Office, counsel for Plaintiff.

Daniel Ernest Petersen, *Pro Se*, Defendant.

## INTRODUCTION

This matter is before the Court on what the Court has construed to be Defendant's pretrial motions to dismiss and for recusal. For the reasons stated below, the Court denies both motions.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Daniel Ernest Petersen has been indicted on six counts of filing a false lien or encumbrance against a federal judge in violation of 18 U.S.C. §§ 2, 1521. (Doc. No. 1.) Magistrate Judge Boylan appointed stand-by counsel. (Doc. No. 6.) The United States moved to have a *Faretta* hearing conducted. (Doc. No. 20.) This Court struck the existing trial date of August 10, 2009, and set a date of August 19, 2009, for the *Faretta* hearing. (Doc. No. 28.)

In advance of that hearing, Defendant filed a "Writ of Praecipe" claiming that he has been "enslaved by 'foreign agents' . . . [who are] engaged in a conspiracy against rights . . . [and] who have restrained [him] without authority of law to protect their 'Organized Crime.'" (Doc. No. 27.) He further claims that the federal courts are "an 'Administrative Court' fraudulently executing a 'Judicial Process'" thereby denying him "[a]ll due process of law . . . without proper jurisdiction.'" (*Id.*)

On August 12, 2009, Defendant then filed a submission containing ninety-five enumerated paragraphs (which he referred to as "items"), each stating his "understand[ing]" of certain legal authorities, terms or principles. (Doc. No. 31.) At the August 19, 2009, *Faretta* hearing, Defendant referred to his enumerated items as raising various motions. (Doc. No. 41.) This Court agreed to review his arguments and written submissions and to respond to those that could support relevant motions. The Government submitted a response to what it considered to be the motions Defendant presented. (Doc. No. 33.) On September 4, 2009, Defendant then submitted a further elaboration of the issues he had raised earlier, seeking dismissal of "this action with prejudice." (Doc. No. 34.) Finally, on September 8, 2009, Defendant filed a "Memorandum of Record" containing seventy-six enumerated paragraphs (again denominated as "items") largely reiterating previously-raised issues. (Doc. No. 35.)[1]

---

[1] Each of the numerous "items" listed in Defendant's August 12th and September 8th filings does not constitute a separate motion. Rather, the Court has reviewed the enumerated paragraphs, in conjunction with Defendant's arguments at the August 19, 2009, hearing to discern plausible grounds for Defendant's motions. Any particular "item" not addressed herein has been deemed irrelevant and any arguments based on such unaddressed items are devoid of merit.

**DISCUSSION**

At the conclusion of Defendant's written submission of August 12, 2009, as well as at the August 19, 2009, hearing, Defendant "demand[ed] an answer, item by item, line by line, within (72) seventy-two hours after receipt," stating that the failure to answer each and every item would be "filed and recorded as an agreement with each item." (Doc. No. 31.) There is, of course, no basis whatsoever in the applicable criminal rules, or elsewhere, for any such demand by a criminal defendant, much less for the stated consequence of a "failure" to respond. Accordingly, the Court expressly rejects any understanding on Defendant's behalf that this Court (or the United States) has admitted any statement of law or fact asserted by Defendant.

Based on Defendant's written submissions and oral argument, the Court discerns Defendant to have articulated nine grounds for a motion to dismiss as well as grounds for a recusal motion.[2]

**I.  Motion to Dismiss**

**A.  Lack of Jurisdiction**

At the outset, Defendant objects to jurisdiction (although at times only in an unspecified manner). (Doc. No. 41 (Transcript of Aug. 19, 2009, Hearing) at 15, 27, 72, 82; Doc. No. 31 ¶ 57.) He specifically challenges the existence of personal jurisdiction (Doc. No. 41 at 15, 18; Doc. No. 31 ¶¶ 7-10 & 11-14), and subject matter jurisdiction, asserting in particular that diversity jurisdiction has been manufactured (Doc. No. 31 ¶¶ 5,

---

[2]  By separate Order, the Court will address the *Faretta* issue of Defendant proceeding *pro se*.

6). Defendant notes his understanding that Title 28 of the U.S. Code, including the prohibition against manufactured diversity jurisdiction, applies in both "civil and criminal actions." (Doc. No. 34.)

With respect to subject matter jurisdiction, the concept of diversity jurisdiction is confined to "civil actions." 28 U.S.C. § 1332. Likewise, the prohibition on manufactured diversity jurisdiction applies only in a "civil action." *Id.* § 1359. In this criminal prosecution alleging illegal actions taken against United States judicial officers, the United States is not relying, and need not rely, on diversity jurisdiction. Rather, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the states, of all offenses against the laws of the United States." 18 U.S.C. § 3231. Accordingly, this Court has jurisdiction in this criminal action alleging violation of federal statutes.

Defendant also makes a series of jurisdictionally related arguments that focus on the nature and power of the federal courts and the law they apply. First, Defendant claims that this court is not a common law court, but rather an "admiralty maritime equity court" with "total disregard to the common law." (Doc. No. 41 at 49.) Defendant asserts that he "live[s] under the common law," not "under statutes, codes or anything that are not properly enacted by Congress." (Doc. No. 41 at 65.) But where a U.S. District Court such as this is hearing a criminal matter, it applies federal criminal law, which is largely statutory. *See generally* Title 18, U.S. Code.[3] Congress has the authority, of course, to

---

[3] A federal court applies common law only where appropriate. For example, it applies *federal* common law in limited contexts of certain federal civil actions. *See*

enact federal statutes in the criminal (as well as the civil) context. *See* U.S. Const. art. I, §§ 1, 8.

In particular, Defendant is charged with violations of Sections 2 and 1521 of Title 18 of the U.S. Code.[4] Defendant argues that subject matter jurisdiction is somehow lacking because those statutes are not "published in the Code of Federal Regulations with a cross implementing reference" to the United States Code. (Doc. No. 31 ¶¶ 70, 71.) But contrary to Defendant's "understand[ing] that Acts of Congress must be published in" the C.F.R., statutes such as those under which he is charged are not required to be so published, as the C.F.R. is the codification of federal *regulations*–that is, legal requirements and prohibitions promulgated largely by federal *agencies*–whereas federal statutes enacted by Congress are codified in the United States Code.

Similarly, Defendant claims that personal jurisdiction is lacking. For example, Defendant apparently contends that the United States cannot pursue an action against him

---

*generally* Erwin Chemerinsky, *Federal Jurisdiction* § 6.1 (5th ed. 2007). And it applies *state* common law in certain civil actions based on diversity jurisdiction. *Id.* § 5.3.5. Here, Defendant relies on the Rules of Decision Act, codified at 28 U.S.C. § 1652, as well as *Erie v. Tompkins*, 304 U.S. 64 (1938). (Doc. No. 31, ¶¶ 56, 69.) He apparently does so in the attempt to support arguments based on the law of various states and the District of Columbia. (*E.g.*, *id.* ¶¶ 51-53.) But any such argument is misplaced here because federal criminal actions are governed by federal criminal law, largely Title 18 of the U.S. Code and the Federal Rules of Criminal Procedure. And Section 1652 applies only "in civil actions." 28 U.S.C. § 1652.

[4] Defendant contends that the effect of Section 1521 would be to close "to the People" all courts, "which will abrogate the Constitution." (Doc. No. 35 ¶ 76.) Defendant fails to elaborate on this argument and the Court discerns no such effect of a statute that simply prohibits one from filing or attempting to file "any false lien or encumbrance" against the property of certain federal officials. 28 U.S.C. § 1521.

5

because the United States is a corporation but has not filed as a corporation doing business in Montana. (Doc. No. 31 ¶¶ 51-53.) Thus Defendant also asserts that the United States cannot, based on the Full Faith and Credit Clause, pursue him in Minnesota, which would have to follow Montana law. (Doc. No. 31 ¶¶ 15, 54, 55.) Finally, he claims the United States is not a corporation registered to do business in Minnesota directly. (Doc. No. 31 ¶¶ 11-14.)

But while such requirements imposed on corporations doing business in particular states do in fact pertain to personal jurisdiction, the doctrine of personal jurisdiction is relevant only in civil matters, not in federal criminal prosecutions. Moreover, personal jurisdiction doctrines concern the constitutional limits on a state court's authority (or that of a federal court exercising diversity jurisdiction) over non-resident *defendants*. *See, e.g.*, 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1063-68 (3d ed. 2002). Here, even assuming this was a civil action, the United States is the plaintiff.

Along similar lines, Defendant contends that the United States of America is a federal corporation, and one that is "located in the District of Columbia." (Doc. No. 31 ¶¶ 11, 26, 29; Doc. No. 34 (citing 28 U.S.C. § 3002(15).) He further claims that the "United States Government was officially [c]ommercialized in 1871," apparently arguing that this entity's powers "shall be limited to the District of Columbia." (Doc. No. 34.)

But Defendant's reliance on 28 U.S.C. § 3002(15) is misplaced. That statute is simply a definitional provision defining the "United States" as, among other options, "a

Federal corporation" solely for purposes of the chapter of which it is part, that is, Chapter 176, "Federal Debt Collection Procedure." 28 U.S.C. § 3002. The applicability of Chapter 176 is confined to civil actions by the United States "(1) to recover a judgment on a debt; or (2) to obtain, before judgment on a claim for a debt, a remedy in connection with such claim." *Id.* § 3001(a). This criminal action is not a civil debt collection action.

In addition, Defendant's reliance on the Organic Act of February 21, 1871, 16 Stat. 419, is likewise misplaced as that statute simply "created a government by the name of the District of Columbia," a municipal corporation with "jurisdiction over all the territory within the limits of the District." *District of Columbia v. John R. Thompson Co.*, 346 U.S. 100, 104 (1953). The present criminal prosecution of Defendant has nothing to do with the District of Columbia or the powers that Congress delegated to the District. Similarly, Defendant's reliance on a commercial law statute from that jurisdiction is mistaken. While that statute provides that "[t]he United States is located in the District of Columbia," that statute also expressly states that it "applies only for purposes of this part," which is Part 3 of Article 9 of District of Columbia's codification of the Uniform Commercial Code, and simply governs the location of various debtors for purposes of perfecting a security interest. This criminal prosecution is governed by federal criminal law, not the commercial (or any other) law of the District of Columbia.[5]

---

[5] Defendant asserts his "understanding" that under 27 C.F.R. § 72.11, "[a]ll crimes against the United States are commercial in nature." (Doc. No. 35 ¶ 24.) Under that provision, "commercial crimes" is defined to include various specified "types of crime," but under Section 72.11's own terms, its definitions are confined to their use in Part 72 of Title 27 of the Code of Federal Regulations. 27 C.F.R. § 72.11. The regulations of Part 72 govern property "seized by alcohol, tobacco and firearms officers

7

Finally, Defendant seems to question venue. (Doc. No. 35, ¶¶ 12-13, 41.) But this criminal prosecution of Defendant is proper in the District of Minnesota because the Indictment charges him with violations that occurred while he was incarcerated at FCI-Waseca. Fed. R. Crim. P. 18. Even if the offenses were only "begun, continued or completed" in Minnesota, venue here would be proper. 18 U.S.C. § 3237.

B.     **Eleventh Amendment**

Relying on the Eleventh Amendment, Defendant asserts a prohibition on "foreign states" from commencing or prosecuting actions such as the present criminal action. (Doc. No. 31 ¶ 25; *accord* Doc. No. 41 at 68 (claiming that the U.S. is a fictitious entity, a corporation in violation of the Eleventh Amendment).) The Eleventh Amendment bars particular actions from being brought in federal courts, namely actions against the States brought by certain parties such as "Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. First, because this criminal action against Defendant is brought by the United States of America, a sovereign nation not subject to any foreign state, the Eleventh Amendment has no application here.[6] Second, the Eleventh Amendment bars only those

---

as subject to forfeiture as being" involved in any violation of federal law. *Id.* § 72.1. Because Defendant is charged under Sections 2 and 1521 of Title 18 of the U.S. Code, Title 27 of the Code of Federal Regulations is inapplicable. For similar reasons, Defendant's extensive citation of various commercial law propositions and provisions is irrelevant in this prosecution.

[6]     Somewhat similarly, Defendant relies on Section 1330(b) of Title 28. (Doc. No. 31 ¶ 27.) But that provision addresses only actions "*against* foreign states" and is confined, moreover, to civil actions. 28 U.S.C. § 1330 (emphasis added).

suits when brought "against one of the United States," not any such suit brought against an individual such as Defendant. *Id.*

Defendant apparently views Assistant U.S. Attorneys and federal judges as "foreign agents" that have seized power in United States based on the fact that attorneys use "Esquire," which he perceives as a British title of nobility prohibited by the U.S. Constitution. (Doc. No. 41 at 19-20, 49, 79; Doc. No. 31 ¶¶ 17-26.) Although titles such as "Esquire" might have had some official meaning in feudal England or Great Britain, in the United States use of such terminology by attorneys is simply an informal "title of courtesy commonly appended after the name of a lawyer." Bryan A. Garner, *Blacks Law Dictionary* 566 (7th ed. 1999). Such a convention hardly indicates or reflects any affiliation with a foreign government or country such as Great Britain.

Perhaps somewhat relatedly, Defendant claims that all attorneys are part of a "bar association" which he perceives to be an illegal monopoly. (Doc. No. 41 at 38, 39-42.) But membership in such associations is purely voluntary and any such organization wields no economic power such that it could exercise monopoly power. Insofar as Defendant is contending that attorneys must be "registered" or licensed by a particular State's Supreme Court (Doc. No. 31 ¶¶ 87-88), such requirements for the practice of law raise no basis on which a criminal defendant may challenge his prosecution.

**C.     Immunity**

Defendant apparently claims immunity but fails to invoke any valid and applicable doctrine of immunity. Defendant claims to be an "'American citizen,' not a United States

citizen,'" yet also contends that having exercised his purported right of expatriation, he is the subject of a foreign state. (Doc. No. 31 ¶¶ 1, 2, 27-28.) But even assuming Defendant was somehow not a U.S. citizen, the Court notes that the applicability of federal criminal law is not confined to such citizens. Rather, federal criminal law applies, at a minimum, to anyone within the territorial jurisdiction of the United States.
1 Wayne R. LaFave, *Substantive Criminal Law* § 4.2 (2d ed. 2003); *see* 18 U.S.C. § 5.

Defendant's immunity argument seems based in part on his invocation of the "Fiduciary Shield Doctrine," which purportedly protects him from "actions taken against individual defendants solely in their capacity as corporate officers." (Doc. No. 41 at 52-54; Doc. No. 31 ¶ 65; *see also id.* ¶¶ 89-91.) But again, such doctrines of corporate law usually apply in the civil context to insulate corporate officers and owners from liability of the corporation. Defendant offers no authority supporting application of such principles in this criminal context. Moreover, the Indictment alleges that Defendant violated Section 1521 in conjunction with others under Section 2, which subjects him to punishment as a "principal":

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2. Any status as a corporate officer here does not provide a shield of immunity sufficing as a basis to dismiss the Indictment before trial.

### D. "Positive Law"

Next, Defendant claims that the federal statutes on which his charges are based, Sections 2 and 1521 of Title 18, have never been enacted into "positive law." (Doc. No. 41 at 32-33, 39, 42; Doc. No. 31 ¶¶ 70-71; Doc. No. 35 ¶¶ 25-26.)[7] Defendant misunderstands, however, the process by which a bill becomes enacted into law and how such acts are then codified in the U.S. Code. As the Ninth Circuit has held, "Congress' failure to enact a title into positive law has only evidentiary significance and does not render the underlying enactment invalid or unenforceable." *Ryan v. Bilby*, 764 F.2d 1325, 1328 (9th Cir. 1985) (addressing Title 26). *Accord United States v. Romig*, 2003 WL 22143730 (D. Minn. Aug. 18, 2003) (addressing Title 21). Where, as here, Congress validly passed a bill and the President signed it, the resulting act is duly enacted and enforceable. *Romig*, 2003 WL 22143730, at *1.[8] Enacting a statute into positive law simply means that Congress has given its authority to the language as it appears in that particular title of the United States Code such that the Code "'can be taken as

---

[7] The Court notes that the Act that created the modern federal criminal code provided in part that "Title 18 of the United States Code . . . is hereby revised, codified *and enacted into positive law*." Act of June 25, 1948, Ch. 645, 62 Stat. 683 (emphasis added).

[8] Defendant argues that Section 1521, "standing as an *un-enacted* statute/code," will "destroy" and "abrogate the whole Constitution." (Doc. No. 34 (emphasis added).) But because the Court Security Improvement Act of 2007, Pub. L. 110-177, 121 Stat. 2536 (of which § 201(a) has been codified as Section 1521 of Title 18 of the U.S. Code) has been duly enacted, any such argument thus relies on a false assumption.

11

authoritative and need not be checked or verified with the corresponding section in the original Statutes at Large.'" *Id.*

More importantly, Defendant misunderstands the significance of a statute lacking the status of being "positive law." That any particular statute is not positive law does not somehow invalidate the statute. It simply means that any discrepancy between the statute as codified in the U.S. Code and the Act that Congress passed must be resolved in favor of the version as reflected in the Statutes at Large. Here, while Defendant purports to challenge the statutes under which he is charged as somehow raising a "positive law" issue, he fails to identify any discrepancy between the original Act as reflected in the Statutes at Large and the codification of those Acts in Title 18 of the U.S. Code. Thus, there appears to be no such issue.[9]

### E.     Ex Post Facto Laws

---

[9] Likewise, Defendant argues that Sections 2 and 1521 of Title 18 "lack the 'shall be' enacting clause" required by 1 U.S.C. § 101. (Doc. No. 34; Doc. No. 35 ¶¶ 25-26.) Any such argument is misplaced because the enacting clause applies to "all *Acts* of Congress," 1 U.S.C. § 101 (emphasis added), as opposed to the resulting *statutes* where such acts are codified in the U.S. Code. The Acts enacting Sections 2 and 1521 contain the required enacting clause. Pub. L. 772, Ch. 645, June 25, 1948, 62 Stat. 683; Pub. L. 110-177, January 7, 2009, 121 Stat. 2534. (Defendant raises the same misplaced objection with respect to other federal statutes as well. (Doc. No. 35 ¶¶ 28-29.)) Defendant thus misconstrues the Government's statement that whether a statute "has been enacted into positive law is irrelevant." (Doc. No. 34.) The United States is not claiming that acts of Congress need not comply with Section 101 of Title 1, which imposes the enacting requirement on "*Acts* of Congress." Rather, it is simply, and accurately, pointing out that whether Congress then "enacts" any particular Title of the U.S. Code into positive law is irrelevant to the validity and enforcability of such statutes that do in fact comply with Section 101.

Defendant next claims that Section 1521 violates the Ex Post Facto Clause. (Doc. No. 41 at 17, 46, 54, 66, 80; Doc. No. 31 ¶¶ 17, 73-75.) Specifically, Defendant argues that the United States is violating the Ex Post Facto Clause by charging him with respect to liens he placed, or caused to be placed, in 1998 and 1999. (Doc. No. 34.)

All six counts of the Indictment charge violations of 18 U.S.C. § 1521. (Doc. No. 1.) Because Section 1521 was enacted on January 7, 2008, it therefore was effective as of that date. *E.g.*, *United States v. Robinson*, 865 F.2d 171, 172 (8th Cir. 1989) (absent expression of contrary intent, criminal statute is effective upon enactment); *United States v. Gavrilovic*, 551 F.2d 1099, 1103 (8th Cir. 1977) (same). Defendant's argument fails to recognize, however, that the Indictment charges him only with those liens he placed between April 2008 and July 2008, all of which occurred after the effective date of the applicable prohibition. Defendant's ex post facto argument is thus without merit.

### F. Statutory Vagueness

Defendant next claims that the statutes on which the charges against him are based are void for vagueness. (Doc. No. 31 ¶ 72.) But Defendant offers no explanation or authority in support of his assertion and this Court's independent review of the applicable statutes reveals no vagueness of any constitutional significance.

### G. Indictment/Grand Jury

Defendant apparently claims the independence of the Grand Jury has been violated. (Doc. No. 41 at 83; Doc. No. 31 ¶¶ 58-64.) But Defendant offers no explanation of any such alleged violation and none is apparent to this Court.

Somewhat relatedly, he suggests that the Indictment here is defective because there is "no affidavit of Complaint on file." (Doc. No. 35 ¶ 31.) But Defendant's reliance on a 1942 South Carolina decision applying the law of that state is misplaced. As explained above, this federal criminal action is governed by federal criminal law.

## H. Speedy Trial

Defendant also claims violations of his right to a speedy trial. (Doc. No. 41 at 18, 64, 69, 80; Doc. No. 31 ¶¶ 68, 94; Doc. No. 35 ¶¶ 34-35, 46-55.)[10] As the United States has noted in its computation of the time that has run under the speedy trial clock, "it appears that only 31 days have run" to date, due to the various motions Defendant has filed. (Doc. No. 33 at 4.) Accordingly, Defendant has not demonstrated a violation of the seventy day statutory limit. 28 U.S.C. § 3161(c)(1).

Nevertheless, Defendant takes issue with the United States' reference to Section 3161(h)(1)(D), which Defendant understands as providing an exclusion from the applicable period where there is a delay resulting from trial with respect to "other charges against the defendant." (Doc. No. 34; *accord* Doc. No. 35 ¶ 57.) But Defendant inaccurately refers to the pre-2008 version of the statute. The 2008 Amendment redesignated former subparagraph (D)–which concerned "delay resulting from trial with respect to other charges"–as subparagraph (B). 18 U.S.C. § 3161 (Supp. 2009), hist. & stat. notes, 2008 amds. Currently, Subparagraph (D) recognizes an exclusion for "delay

---

[10] Relying on Section 3162(a)(1), Defendant also suggests the Complaint must be dismissed because no indictment or information was filed within the specified time. (Doc. No. 35 ¶ 54.) But that provision is inapplicable, as this criminal action was initiated by an Indictment, not by a Complaint. (Doc. No. 1.)

14

resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D) (Supp. 2009).

Separately, Defendant also claims that the 31 days that (according to the United States' calculation) "have run on the speedy trial clock to date" exceeds the 30 day "time limit requirement" of Section 3161(c)(2). (Doc. No. 34; *accord* Doc. No. 35, ¶¶ 43, 52.) Defendant apparently misreads this provision to impose an outside time limit on when the trial must commence. In fact, the provision provides a minimum time period before which a trial "shall *not* commence." 18 U.S.C. § 3161(c)(2) (emphasis added). Moreover, here, trial has not yet commenced, much less commenced in "less than thirty days" from when Defendant first appeared through counsel or elected to proceed pro se.

### I. False Imprisonment

Defendant also seeks damages for false imprisonment. (Doc. No. 41 at 28; Doc. No. 31 ¶¶ 31-44 & 79-80.) He apparently bases his claim on the law of the District of Columbia, contending that it is state law required to be applied in federal district court under the *Erie* doctrine and 28 U.S.C. § 1652. (Doc. No. 41 at 28; Doc. No. 31 ¶¶ 56 & 69.) Defendant apparently has chosen District of Columbia law as the basis for his claim due to the fact that the U.S. government is "based" in the District of Columbia. (Doc. No. 31 ¶¶ 29-30.)

But as noted above, federal law applies here. Even assuming that federal law provides a cause of action for false imprisonment, any such motion is entirely misplaced here. Defendant has not established that his incarceration was in fact illegal or otherwise invalid and his claims for damages provide no grounds for dismissal of the Indictment.

## II. Motion for Recusal

Defendant also moves this Judge to recuse himself because the crimes alleged involve Defendant filing liens or attempting to file liens against other federal judges. (Doc. No. 41 at 17, 26.) Recusal is required, however, only in proceedings "in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The question is whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *United States v. Dehghani*, 550 F.3d 716, 721 (8th Cir. 2008). Defendant bears the burden of overcoming the presumption of impartiality. Defendant has offered no credible evidence or argument that the impartiality of this Judge could be questioned, much less enough to overcome the presumption. (*Cf.* Doc. No. 22 (denying motion to disqualify Mag. J. Boylan in this matter).) This Court's impartiality will not be compromised simply because Defendant's alleged crimes were directed against other federal judges.[11]

Undeterred, Defendant also asserts that this Judge must recuse himself because he, "as a fiduciary," has a financial interest in the subject matter in controversy or in a party

---

[11] Defendant also seems to argue that this Judge has somehow violated Section 453, which establishes a judicial oath of office. (Doc. No. 34.) Any such argument is baseless.

16

to the proceeding, or any other interest that could be substantially affected by the outcome of the proceedings." (Doc. No. 34 (quoting 28 U.S.C. § 455(b)(4)); Doc. No. 35, ¶ 36.) But Defendant fails to identify any such financial interest this Judge might have in this matter. Nor is any such possible interest apparent in this criminal prosecution against Defendant for placing or attempting to place false liens on the property of other federal judges. Whatever the outcome of this matter, it simply has no bearing on any financial interest of this Judge as a fiduciary or otherwise.

## CONCLUSION

In light of Defendant's election to proceed *pro se*, this Court has construed several of his submissions as constituting a motion to dismiss the Indictment and a motion for recusal. None of the asserted grounds for relief warrant either dismissal or recusal.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Court construes certain of Defendant's written submissions (Doc. Nos. 27, 30-31, 34 & 35) to constitute a Motion to Dismiss the Indictment and a Motion for Recusal;

2. Defendant's Motion to Dismiss is **DENIED**; and

3. Defendant's Motion for Recusal is **DENIED**.

Dated: September 18, 2009        s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge